UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------

TAMIKA DANIEL, on behalf of herself and others
similarly situated,

                              Plaintiff,

            v.

MONDELEZ INTERNATIONAL, INC.,

                              Defendant.

------------------------------------------------------------

**MEMORANDUM & ORDER**
17-CV-00174 (MKB)

MARGO K. BRODIE, United States District Judge:

    Plaintiff Tamika Daniel commenced a putative class action on behalf of herself and all

others similarly situated against Defendant Mondelēz International Inc. (Compl., Docket Entry

No. 1.) Plaintiff alleges that "non-functional slack-fill" ("excessive empty space") in

Defendant's Swedish Fish brand candy product (the "Product") misrepresents the amount of

food, (*id.* ¶¶ 2–4), which violates sections 349 and 350 of New York's General Business Law

("GBL") and constitutes common law fraud under New York state law, (*id.* ¶¶ 58, 66, 72, 82).

Plaintiff seeks monetary damages, injunctive relief, and attorneys' fees. (*Id.* ¶¶ 64, 71, 80, 87.)

Defendant moves to dismiss the Complaint pursuant to Rules 12(b)(6) and 9(b) of the Federal

Rules of Civil Procedure. (Def. Mot. to Dismiss ("Def. Mot."), Docket Entry No. 22; Def. Mem.

in Supp. of Def. Mot. ("Def. Mem."), Docket Entry No. 22-1.) For the reasons discussed below,

the Court grants Defendant's motion to dismiss in its entirety. The Court grants Plaintiff leave to

amend only her statutory claims and finds that she lacks standing to pursue injunctive relief.

## I.  Background

    The facts alleged in the Complaint are assumed to be true for the purpose of deciding

Defendant's motion.  Plaintiff is a citizen of the state of New York and resides in Kings County.

(Compl. ¶ 19.)  Defendant is a corporation organized under the laws of Virginia with its

headquarters in Illinois.[1]  (*Id.* ¶ 21.)  Plaintiff alleges that Defendant misleadingly "label[s],

packag[es], and advertis[es]" its Product which is "regularly sold at convenience stores, grocery

stores, and supermarkets."  (*Id.* ¶¶ 1, 22.)

According to Plaintiff, the Product is "packaged in a transparent plastic pouch inside a

non-transparent thin cardboard box" standing "almost exactly [six] inches tall."  (*Id.* ¶¶ 4–5.)

Plaintiff asserts that the size of the box misleads purchasers by "mak[ing] it appear as though

[consumers] are buying more than what is actually being sold."  (*Id.* ¶ 4.)  While conceding that

some "slack-fill," (the empty space within the Product's packaging), may be justified, Plaintiff

alleges that the current amount "exceeds" what is necessary.  (*Id.* ¶ 6.)  By way of comparison,

Plaintiff alleges that Trolli® Sour Brite Crawlers minis and Dots®, other gummy candies, are

packaged in similar sized boxes with significantly less slack-fill.  (*Id.* ¶¶ 6–9.)  Relying on these

comparisons, Plaintiff contends that the Product contains misleading slack-fill as defined by the

Federal Food Drug & Cosmetic Act ("FDCA") Section 403(d) (21 U.S.C. 343(d)), the Code of

Federal Regulations Title 21 part 100, *et seq.*, and parallel state laws.  (*Id.* ¶¶ 2, 32–33.)

Plaintiff purchased two boxes of the Product relying on the size of the containers.  (*Id.* ¶

19.)  Plaintiff first purchased the Product on Long Island, New York in 2016.  (*Id.*)  Despite

noticing the slack-fill, Plaintiff assumed that that particular box "had been inadequately filled by

accident."  (*Id.*)  Plaintiff only "realized that the slack-fill was there by design" after purchasing

---

[1]  Defendant asserts that Plaintiff's claim is against Mondelēz International Inc. *and* its United States operating company Mondelēz Global LLC.  (Def. Mem. in Supp. of Def. Mot. ("Def. Mem."), Docket Entry No. 22-1.)  Even though Plaintiff only names Mondelēz International Inc., according to Defendant, Mondelēz Global LLC is the operating company that actually sells and distributes the products at issue in the United States.

another box on December 8, 2016, at the Atlantic Center Target Store in Brooklyn, New York for $1.08. (*Id.*) Having purchased the Product "on the reasonable assumption that [the] box was filled to functional capacity," Plaintiff was disappointed by the extent of slack-fill, and "would not have paid [$1.08] had she known that the box was more than half empty or had the box been proportioned to its actual contents." (*Id.* ¶ 20.)

Plaintiff includes in the Complaint photographs of the Product's packaging as well as that of the alleged comparator candies. (*See id.* ¶¶ 4, 6, 8.) Defendant proffers additional photographs and details regarding the Product's packaging and that of the comparator candies.[2] (*See* Sandra Hanian Decl. in Supp. of Def. Mot. ("Hanian Decl.") ¶ 3, Docket Entry No. 22-2.) Defendant's photographs include a snapshot of the Product's nutritional label listing various facts such as the serving size (seven pieces) and number of servings (two). (*Id.* ¶ 3(b).) Defendant also states that the candy boxes "indicate that [the Product] is manufactured by Mondelez Global LLC" while Trolli® Sour Brite Crawlers minis and Dots® are manufactured by Ferrara Candy Company and Tootsi Roll Industries, LLC respectively.[3] (*Id.* ¶ 4.) Plaintiff does not dispute the authenticity of the photographs and references in the Defendant's declaration and also relies extensively on the Product's packaging and that of the alleged comparators.

---

[2] Defendant requests that the Court consider materials outside the Complaint filed in conjunction with its motion to dismiss. (*See* Def. Mem. 5 n.3; Sandra Hanian Decl. in Supp. of Def. Mot. ("Hanian Decl."), Docket Entry No. 22-2.) Plaintiff does not oppose Defendant's request. (*See generally* Pl. Opp'n to Def. Mot. ("Pl. Opp'n") 6–8, Docket Entry No. 23.) As discussed in section (b), the Court's consideration of Defendant's submission regarding the labeling of the box does not convert this motion to dismiss to a motion for summary judgment.

[3] In its declaration, Defendant includes Target's pricing of the Product, the alleged comparators, and other "theater box cand[ies]" — all sold for one dollar. (Hanian Decl. ¶ 3(h) & (i).) Plaintiff, however, did not necessarily rely on the pricing of the comparator candies. Regardless, the Court does not rely on the pricing of comparator candies in its analysis.

## II. Discussion

### a. Standards of review

#### i. Rule 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Concord Assocs., L.P. v. Entm't Prop. Trust*, 817 F.3d 46, 52 (2d Cir. 2016) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

#### ii. Rule 9(b)

"Rule 9(b) requires that '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'" *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016) (alteration in original) (quoting Fed. R. Civ. P. 9(b)). "To satisfy this Rule, a complaint alleging fraud must '(1) specify the statements that the plaintiff

contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Id.* (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). Ultimately, whether a complaint satisfies Rule 9(b) "depends 'upon the nature of the case, the complexity or simplicity of the transaction or occurrence, the relationship of the parties and the determination of how much circumstantial detail is necessary to give notice to the adverse party and enable him to prepare a responsive pleading.'" *United States v. Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593, 616 (S.D.N.Y. 2013) (citation omitted); *see United States ex rel. Wood v. Allergan, Inc.*, 246 F. Supp. 3d 772, 787 (S.D.N.Y. 2017) (quoting same); *Kane ex rel, U.S. v. Healthfirst, Inc.*, 120 F. Supp. 3d 370, 383 (S.D.N.Y. 2015) (quoting same); *U.S. ex rel Bilotta v. Novartis Pharm. Corp.*, 50 F. Supp. 3d 497, 508 (S.D.N.Y. 2014) (quoting same);; *see also Rombach v. Chang*, 355 F.3d 164, 171 (discussing the purpose of the particularity requirement and emphasizing fair notice to the defendant).

### b. Consideration of documents other than the Complaint

When considering a motion to dismiss, courts generally are "limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Wilson v. Kellogg Co.*, 628 F. App'x 59, 60 (2d Cir. 2016) (citation omitted); *see also Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230–31 (2d Cir. 2016) ("A complaint 'is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" (citation omitted)). Even "[w]here a document is not [expressly] incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Nicosia*, 834 F.3d at 230–31. To take into

account "materials extraneous to the complaint," a plaintiff must "*rely* on the terms and effect of the document in drafting the complaint; mere notice or possession is not enough.'" *Id.* (citation omitted). In addition, "[e]ven where a document is considered "'integral' to the complaint," "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document," and "[i]t must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Id.* (citations omitted).

The Court's consideration of Defendant's submissions regarding the labeling of the box does not convert this motion to dismiss to a motion for summary judgment. Defendant's submissions relate only to the packaging of the Product — the very basis for Plaintiff's claims. *See St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144, 156 (E.D.N.Y. 2010) ("In deciding a motion to dismiss under Rule 12(b)(6), the court may, at its discretion, consider matters of which judicial notice may be taken, as well as documents extrinsic to the complaint where a plaintiff 'relies heavily upon [the documents] terms and effect, [thus] render[ing] the document integral to the complaint.'" (citing *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–53 (2d Cir. 2002))). "Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).

### c. Plaintiff does not have standing to pursue injunctive relief

Defendant argues that Plaintiff is not entitled to injunctive relief because she "fails to allege any intent to purchase [the Product] in the future," thereby failing to allege a likelihood of continuing or future injury. (Def. Mem. 25.) Rather than directly refuting Defendant's argument, Plaintiff advances two novel theories: (1) that she has "individual standing" and that

Article III "must [be] adjusted" because there will never be a proper party otherwise under the circumstances; and (2) that she is "at risk of future harm regarding her non-pecuniary damages." (Pl. Opp'n to Def. Mot. ("Pl. Opp'n") 24, Docket Entry No. 23.)

A plaintiff seeking injunctive relief "must show the three familiar elements of standing: injury in fact, causation, and redressability." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). "[T]o meet the constitutional minimum of standing" for injunctive relief, a plaintiff "must carry the burden of establishing that 'he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct.'" *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983)); *see also Nicosia*, 834 F.3d at 239 ("Plaintiffs lack standing to pursue injunctive relief where they are unable to establish a 'real or immediate threat' of injury." (first citing *Lyons*, 461 U.S. at 111–12; and then citing *Shain*, 356 F.3d at 215–16)); *Pungitore v. Barbera*, 506 F. App'x. 40, 41 (2d Cir. 2012) ("[W]hen seeking prospective injunctive relief, the plaintiff must prove the likelihood of *future* or *continuing* harm."). The alleged injury "must be 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 383 (2d Cir. 2015) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. ---, ---, 134 S. Ct. 2334, 2341 (2014)); *Am. Civil Liberties Union v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015) ("The Supreme Court has 'repeatedly reiterated that "threatened injury must be *certainly impending* to constitute injury in fact," and that "[a]llegations of *possible* future injury" are not sufficient.'" (alteration in original) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013))).

A plaintiff "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he . . . will be injured in the future." *Shain*, 356 F.3d at 215; *see also Nicosia*, 834

F.3d at 239 (stating that past injuries do not confer standing to seek injunctive relief); *Pungitore*, 506 F. App'x. at 42 (stating that, while past wrongs may be "evidence bearing on whether there is a real and immediate threat of repeated injury,' such evidence 'does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects'" (quoting *Lyons,* 461 U.S. at 102)).  "In establishing a certainly impending future injury, . . . the plaintiff must establish how he or she will be injured prospectively and that the injury would be prevented by the equitable relief sought."  *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) (collecting cases).  "[A]t the pleading stage, standing allegations need not be crafted with precise detail, nor must the plaintiff prove his allegations of injury."  *Baur v. Veneman*, 352 F.3d 625, 631 (2d Cir. 2003) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

In light of these principles, Plaintiff's arguments are meritless.  Essentially, Plaintiff's first argument is an attempt to artfully plead around the constitutional requirements for third-party standing, including as discussed in this Court's decision in *Greene v. Gerber Products Co.*, 262 F. Supp. 3d 38, 55–56 (E.D.N.Y. 2017).  As in *Greene*, Plaintiff seeks to assert standing on behalf of individuals who are not yet aware of the alleged misrepresentation.  *Greene*, 262 F. Supp. 3d at 56.  The Court acknowledges the persuasive value of Plaintiff's argument that, without third-party standing, consumers could not enjoin false or deceptive advertising because "(1) if they were unaware of the falsity of the advertising and therefore at risk of future injury, they would not bring suit, and (2) once they become aware that a product is falsely or deceptively advertised, they cannot plausibly allege that they would re-purchase the product."  *Id.*  Nevertheless, as explained in *Greene*, third-party standing is generally limited to situations where "constitutional rights are at risk" and "the relationship between a class representative and

would-be consumers 'is not the type of close relationship courts have recognized as creating a 'prudential exception' to the third-party standing rules.'"[4] *Id.*; *see also Kommer v. Bayer Consumer Health, a division of Bayer AG*, 710 F. App'x 43, 44 (2d Cir. 2018) ("[A]ssuming his past purchases . . . resulted in [an] injury . . . , [plaintiff] has not shown that he is likely to be subjected to further [injurious] sales of that sort because he fail[s] to allege that he intends to [purchase the offending product] in the future . . . Accordingly, he has no standing under Article III."); *Albert v. Blue Diamond Growers*, 151 F. Supp. 3d 412, 418 (S.D.N.Y. 2015) ("Although *Ackerman* [*v. Coca–Cola Co.*, No. 09-CV-0395, 2010 WL 2925955, at *15 n.23 (E.D.N.Y. July 21, 2010)] and other cases from the Eastern District of New York may suggest that future injury is not required in the consumer protection context, this Court declines to follow these cases because binding Supreme Court and Second Circuit precedent dictates otherwise.").

As to future "non-pecuniary damages," Plaintiff proffers two injuries recognized by district courts within the Ninth Circuit: that absent an injunction, a "plaintiff-consumer will 1) no longer be able to confidently rely on the defendant's representations, and 2) refrain from purchasing products in the future even if they in fact conform to her expectations." *Duran v. Creek*, No. 15-CV-05497, 2016 WL 1191685, at *7 (N.D. Cal. Mar. 28, 2016) (citations omitted); *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012); *but see Victor v. R.C. Bigelow, Inc.*, 708 F. App'x 333, 334 (9th Cir. Dec. 20, 2017) (holding that plaintiffs lacked Article III standing where they "[would] not consider buying even properly labeled [product] until they receive an injunction"). However, Plaintiff fails to provide any binding or even persuasive authority from this Circuit or New York state courts. In addition,

---

[4] A more complete discussion on third-party standing is included in *Greene v. Gerber Products Co.*, 262 F. Supp. 3d 38, 55–56 (E.D.N.Y. 2017).

although non-pecuniary harm such as emotional distress is cognizable under section 349 of the GBL, the type of injury alleged by Plaintiff does not appear to rise to the level of harms already recognized. *See, e.g., Bose v. Interclick, Inc.*, No. 10-CV-9183, 2011 WL 4343517, at *9 (S.D.N.Y. Aug. 17, 2011) (finding that "courts have recognized . . . *privacy* violations" to be actionable injuries under section 349) (emphasis added); *Wood v. Capital One Servs., LLC*, 718 F. Supp. 2d 286, 292 (N.D.N.Y. 2010) (finding pleading requirements for injury satisfied where plaintiff alleged he suffered from "humiliation, anger, anxiety, emotional distress, fear, frustration and embarrassment"); *Midland Funding, LLC v. Giraldo*, 961 N.Y.S.2d 743, 749 (Dist. Ct. 2013) (listing plaintiff's alleged non-pecuniary injuries including "[s]leep deprivation; anxiety; nervousness; fear; worry; fright; shock; strain to her marriage; humiliation and intimidation"). Plaintiff's annoyance at being unable to confidently purchase Defendant's Product does not rise to the type of non-pecuniary injury recognized under New York law.

### d. New York statutory claims under GBL sections 349 and 350

GBL section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349. GBL section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 350.

To assert a claim under either section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [the] plaintiff suffered injury as a result of the allegedly deceptive act or practice."[5] *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (citing *Koch v. Acker, Merrall & Condit Co.*, 18

---

[5] The parties do not dispute that Defendant's challenged conduct is consumer-oriented.

N.Y.3d 940, 944 (2013)); *see Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (citing the elements for a prima facie case under section 349).

Claims under GBL sections 349 and 350 are not subject to the pleading-with-particularity requirements of Rule 9(b). *Greene*, 262 F. Supp. 3d at 67; *Schwartzco Enters. LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 359 (E.D.N.Y. 2014) (quoting *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005)); *see also Leonard v. Abbott Labs., Inc.*, No. 10-CV-4676, 2012 WL 764199, at *19 (E.D.N.Y. Mar. 5, 2012) (considering case law and discerning a categorical rule that New York GBL section 349 claims, "regardless of whether they 'sound in fraud,' or are premised on specific misrepresentations rather than an 'advertising scheme,' are not subject to the heightened pleading requirement of Rule 9(b)"). With an exception not relevant here,[6] "[t]he standard for recovery under . . . [section] 350, while specific to false advertising, is otherwise identical to section 349." *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002).

### i.    Misleading slack-fill under the FDCA and parallel state statutes

Defendant first asserts that Plaintiff fails to sufficiently allege that the Product's slack-fill is misleading as defined by the FDCA and incorporated by the parallel New York state statutes.[7]

---

[6] "To prevail on a claim under GBL [section] 350, a plaintiff must demonstrate reliance on defendants' false advertising. However, [section] 349 does not require proof of reliance." *Ackerman v. Coca–Cola Co.*, No. 09-CV-0395, 2010 WL 2925955, at *23 (E.D.N.Y. July 21, 2010) (first citing *Leider v. Ralfe*, 387 F. Supp. 2d 283, 292 (S.D.N.Y. 2005); and then citing *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000)).

[7] Because any claim for slack-fill deemed permissible under the FDCA would be preempted, Plaintiff must allege Defendants' product contains slack-fill that is non-functional, i.e. misleading, as defined by the FDCA. *See Bautista v. CytoSport, Inc.*, 223 F. Supp. 3d 182, 192 (S.D.N.Y. 2016) ("The Court further infers that Plaintiff means to allege that the slack fill is nonfunctional within the meaning of the FDA regulation, because if Plaintiff were alleging fraud based on slack fill permitted under those regulations, such a claim would be preempted."); *cf.*

(Def. Mem. 9–14.); *see also* N.Y. Agric. & Mkts. Law § 201(4) (deeming food to be misbranded "[i]f its container is so made, formed, colored or filled as to be misleading"); 1 NYCRR § 259.1(a)(2) (adopting federal definitions and standards for food packaging and labeling).[8]

Under the FDCA, "[s]lack-fill is the difference between the actual capacity of a container and the volume of product contained therein." 21 C.F.R. § 100.100(a). Recognizing the inevitability and value of slack-fill in many products, the FDCA only considers "*non-functional*" slack-fill to be misleading when placed in a package where consumers are unable to fully view the contents.[9] *Id.* According to the FDCA, expressly incorporated by reference in 1 NYCRR section 259.1, (*see* Compl. ¶ 26):

> [n]onfunctional slack-fill is the empty space in a package that is filled to less than its capacity for reasons other than': (1) protection of contents; (2) the requirements of the machines used for enclosing the package; (3) unavoidable product settling; (4) the need for the package to perform a specific function; (5) the fact that the product consists of a food packaged in a reusable container where the container is part of the presentation and has value; or (6) inability to increase level of fill or to further reduce the size of the package.

*Stephanie Escobar v. Just Born Inc. et al.*, No. 17-CV-01826, 2017 WL 5125740, at *7 (C.D.

---

*Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-04697, 2016 WL 6459832, at *4 (S.D.N.Y. Oct. 26, 2016) ("[Defendant] instead argues that [p]laintiffs cannot avoid preemption through conclusory allegations that [defendant] violated federal regulations. This is beside the point . . . . [P]reemption is an affirmative defense and the burden of proof lies with the party propounding it.").

[8] At the time of the filing of this Memorandum and Order, Lexis appears to have mistakenly added a qualifier to 1 NYCRR section 259.1(a). According to the version on Lexis, 21 C.F.R. section 100.100(a) was only incorporated for "fresh produce which has been treated with a post-harvest coating of wax/or resin." *Id.* Having consulted the print version of the regulation, Plaintiff's citation appears correct. In either case, for the purpose of deciding this motion, the Court assumes that 21 C.F.R. section 100.100(a) and the requirements of the New York Agriculture and Markets Law section 201(4) and 1 NYCRR section 259.1(a)(2) are co-extensive.

[9] The parties agree the Product does not allow consumers to view its contents.

Cal. June 12, 2017) (citing 21 C.F.R. § 100.100(a)(1)-(6)). Because the FDCA and parallel state statutes only find non-functional slack-fill to be misleading, these six enumerated reasons essentially serve as exemptions or "safe harbors."

In the Complaint, Plaintiff conclusorily asserts that the Product contains "excess" slack-fill not "justified as functional based on the exemptions in [section] 100.100(a)." (Compl. ¶ 31.) In support of this assertion, Plaintiff relies on the "fact that other similarly sized candy boxes contain significantly less slack-fill." (*Id.* ¶ 32.) Thus, according to Plaintiff, the slack-fill may not be explained by the "need to protect package contents or accommodate machines and settling." (*Id.*)

Plaintiff's allegations as to the non-applicability of the "safe harbors" in 21 C.F.R. section 100.100(a)(1)-(6) are quintessential examples of "bare assertions" insufficient to withstand a motion to dismiss following *Iqbal* and *Twombly*. While comparator products may provide evidence of non-functional slack-fill, Plaintiff fails to allege any facts to support its assertion that the candies and their packaging share any meaningful similarities to validate the comparisons. *See Bautista*, 223 F. Supp. 3d 182, 190–91 (S.D.N.Y. 2016) (granting motion to dismiss where plaintiff only provided "wholly conclusory allegations" while noting the potential value of expert testimony and comparisons to similar products). Instead, Plaintiff simply alleges that "[t]he comparison is between the *same* kind of product in the *same* kind of packaging that is enclosed in the *same* way by the *same* kind of technology." (Compl. ¶ 32 (emphasis added).) Repeatedly asserting that the candies are the "same" does not make them so. Plaintiff must avoid a common pitfall — *telling*, rather than *showing* — and explain to the Court *why* the candies and their packaging are the same or sufficiently similar. Otherwise, Plaintiff effectively asks the Court to conclude that all "gummy" candy packaged in relatively similar sized boxes are

the *same* in all material respects.[10] Even a cursory inspection of the candy boxes, however, reveals that the candies may not have been enclosed in the same or similar manner. (*See* Hanian Decl. ¶ 3(b), (g) (indicating that the Product and Dots® are manufactured by different companies); *see also id.* ¶ 4 (noting that the boxes list different companies from one another).)[11] Without more, Plaintiff's allegations regarding the exemptions only serve to state the conclusion — that none of the exemptions apply. *Bush v. Mondelez Int'l, Inc.*, No. 16-CV-02460, 2016 WL 5886886, at *4 (N.D. Cal. Oct. 7, 2016) (finding plaintiff's conclusory assertions effectively amounted to stating "none of th[o]se circumstances apply here").

In her Opposition brief and accompanying declaration, Plaintiff provides allegations plausibly suggesting the existence of non-functional slack-fill in the Product. Plaintiff proffers a comparison between the Product and Assorted Swedish Fish Box ("Assorted Box"), presumably a later variation of the Product. (*See* Pl. Opp'n 5–6.) While packaged in boxes "identical in size," the Product and the Assorted Box contain candy pieces that are the same size, with the

---

[10] Plaintiff needs to explain, for example, why the settling of gummy candy is not dependent on differences in shape. Even in the Opposition brief, Plaintiff attempts to explain any potential differences in the candies by stating the conclusion — that the comparisons were valid. (*See* Pl. Opp'n 7 ("Defendant notes that the candies are shaped differently. But that does not explain the large quantitative difference between the amount of [candy in the Product] and the amount of candy in competitors' boxes.").) Without an explanation as to why any differences are immaterial or why all gummy candies and their packaging are inherently similar, Plaintiff fails to adequately allege that the exemptions do not apply.

[11] The Court relies on Defendant's description of the information on the candy boxes and the proffered photographs. Both the photographs and descriptions convey details that are physically present on the boxes, albeit in different ways. *See Newman v. Holder*, 101 F. Supp. 2d 103, 106 (E.D.N.Y. 2000) (considering statements by declarant refuting various allegations integral to the complaint in resolving motion to dismiss). Plaintiff does not dispute that the candy boxes list different companies. (*See generally* Pl. Opp'n 6–8.) Further, the Court does not rely on Defendant's *conclusion* that the listing of different companies "indicate" that the candies were manufactured by different companies. (*See* Hanian Decl. ¶ 4.) The Court independently reaches a similar conclusion based on the description listed on the boxes. Moreover, the available photographs support such a finding. (*See id.* ¶ 3(b), (g).)

latter "even includ[ing] red Swedish Fish that are identical" to those found in the Product. (*Id.*) "The only physical difference between the [Product and the Assorted Box], other than color, is that the [Assorted Box] contains 3.5 oz. (17 to 18 pieces), whereas the Product contains 3.1 oz. (14 pieces)." (*Id.*) Plaintiff persuasively argues that because the only difference between the Product and the Assorted Box is in the color and number of candies enclosed, the Product must have *some* non-functional slack-fill. (*Id.* at 6.); *see also White v. Just Born, Inc.*, No. 17-CV-04025, 2017 WL 3130333, at *8 (W.D. Mo. July 21, 2017) (finding significant the fact that the defendant had "packaged and sold the same size boxes of [the candies at issue], for promotional purposes, with less slack-fill"). However, none of these allegations are in the Complaint. *See Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005) ("It is long-standing precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs."), *aff'd,* 157 F. App'x 398 (2d Cir. 2005). Further, even if these facts were properly alleged in the Complaint, the claims pursuant to GBL sections 349 and 350 nevertheless fail because, as discussed below, Plaintiff fails to plead a material misrepresentation.[12]

---

[12] For ease of reference, the Court uses the term "material misrepresentation" as a shorthand for "conduct . . . that is materially misleading" under GBL section 349 and does not suggest that a "misrepresentation" is always required for conduct to be actionable under GBL section 349. *See Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 406 (E.D.N.Y. 2010) ("New York law recognizes that a statement can be materially misleading without being a material misrepresentation." (citation omitted)). The Court also finds the material misrepresentation to be an apt description of the type of misleading conduct at issue — an allegedly misbranded product. (*See, e.g.*, Compl. ¶ 77 ("Consumers purchasing the Product were, and continue to be, exposed to Defendant's material misrepresentations."); Pl. Opp'n 21 ("Unlike the *Izquierdo* plaintiff, Plaintiff effectively alleges she paid a premium for her Product based on Defendant's misrepresentations . . . ."); *see also Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 55 (1999) ("Generally, claims under the statute are available to an individual consumer who falls victim to misrepresentations made by a seller of consumer goods through false or misleading advertising." (citation omitted)).

### ii. Material misrepresentation under GBL sections 349 and 350

Under New York law, a material misrepresentation is one that is "likely to mislead a reasonable consumer acting reasonably *under the circumstances*." *Orlander*, 802 F.3d at 300 (citation omitted and emphasis added); *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 53 (E.D.N.Y. 2015) ("Courts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole. The entire mosaic is viewed rather than each tile separately." (internal quotation marks omitted) (first citing *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427, 2014 WL 4773991, at *8 (E.D.N.Y. Sept. 24, 2014); and then citing *Time Warner Cable, Inc. v. DIRECTV, Inc.*, No. 06-CV-14245, 2007 WL 1138879, at *4 (S.D.N.Y. Apr. 16, 2007))); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288 (S.D.N.Y. 2014) ("[I]n resolving the reasonable consumer inquiry, one must consider the entire context of the label." (alteration in original) (citation and internal quotation marks omitted)); *Ackerman*, 2010 WL 2925955, at *15 (conducting the reasonable consumer analysis by "[v]iewing each allegedly misleading statement in light of its context on the label and in connection with the marketing of [the product] as a whole"). Therefore, sections 349 and 350 require more than a determination as to whether the slack-fill, standing alone, constitutes a misrepresentation. Rather, sections 349 and 350 require an additional finding that a reasonable consumer in like circumstances would consider the misrepresentation *material*. *See, e.g.*, *Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 312 (S.D.N.Y. 2017) (dismissing claims where a "disclaimer [was] printed in reasonably-sized font right at the top of the Instructions" that were allegedly deceptive), *aff'd sub nom. Kommer v. Bayer Consumer Health, a division of Bayer AG*, 710 F. App'x 43, 44 (2d Cir. Jan. 31, 2018); *Druyan v. Jagger*, 508 F. Supp. 2d 228, 244 (S.D.N.Y. 2007) (dismissing false advertising claim where a reasonable consumer could not have

been misled by internet advertisements and daily email alerts that a concert was to take place as scheduled "[g]iven the multiple warnings . . . that the . . . "DATE & TIME [WERE] SUBJECT TO CHANGE").

Plaintiff's statutory claims fail because non-functional slack-fill as defined by the FDCA and parallel state statutes, even assuming its existence, are not *per se* material misrepresentations under sections 349 and 350. *See N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514, 519 (S.D.N.Y. 2013) (distinguishing between violations of FDA and New York state labeling standards and actionable claims under GBL sections 349 and 350); *Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 425 (S.D.N.Y. 2011) (analyzing alleged violations of New York Agriculture and Markets Law and GBL section 349 as separate claims); *Gentile v. Stay Slim, Inc.*, 819 N.Y.S.2d 848, 2006 WL 1140459, at *1 (Sup. Ct. 2006) (noting that the complaint asserted four separate causes of action pursuant to "GBL [section] 349, . . . GBL [section] 350, . . . [section] 201 of the New York [Agriculture and Markets] Law, and . . . [claim] for unjust enrichment); *see also Bush v. Mondelez Int'l, Inc.*, No. 16-CV-02460, 2016 WL 7324990, at *3 (N.D. Cal. Dec. 16, 2016) (explaining that "Courts, not the FDA, determine whether a product is misleading under [state consumer protection] laws"). While the FDCA and parallel state statutes define a "misrepresentation" for purposes of those statutes, New York courts, as described above, have adopted an objective definition of what constitutes a "material misrepresentation" under sections 349 and 350 — a definition that takes context into account.

Several courts, including a district court within the Second Circuit, have held that reasonable consumers would not be misled by non-functional slack-fill as a matter of law where the products clearly disclosed accurate net weight and/or the total product count. *See Fermin v. Pfizer Inc.*, 215 F. Supp. 3d 209, 212 (E.D.N.Y. 2016); *see also Ebner v. Fresh, Inc.*, 838 F.3d

958, 965 (9th Cir. 2016); *Bush*, 2016 WL 5886886, at *3. Others suggest that a reasonable consumer would take into consideration additional factors aside from package size. *See Mennen Co. v. Gillette Co.*, 565 F. Supp. 648, 655 (S.D.N.Y. 1983) (finding survey evidence unreliable where consumers "were not allowed to pick up or open the containers or to draw them close enough for reading purposes, although they would clearly be able to do this when examining merchandise shelved in stores"), *aff'd sub nom. Mennen v. Gillette*, 742 F.2d 1437 (2d Cir. 1984)); *United States v. 174 Cases, More or Less, Delson Thin Mints Chocolate Covered*, 195 F. Supp. 326, 328 (D.N.J. 1961) (finding for defendant while noting in part that that "[t]he Correct net weight of the candy is disclosed on the wrapper of the accused package), *aff'd*, 302 F.2d 724 (3d Cir. 1962). This latter approach is consistent with the Second Circuit's emphasis on context "in determining whether a reasonable consumer would have been misled by a particular advertisement." *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) (affirming judgment of district court dismissing complaint alleging violation of various state consumer protection statutes including GBL section 349). Moreover, because consumers have come to expect at least *some* slack-fill, context, including labels, are likely important considerations in assessing product amount or quantity. (*See* Compl. ¶ 36 ("consumers may have come to expect significant slack-fill in boxed candy products")); *Bush*, 2016 WL 5886886, at *3 ("'Targeted consumers' thus expect some slack-fill."); *United States v. 116 Boxes, etc., Arden Assorted Candy Drops*, 80 F. Supp. 911, 913 (D. Mass. 1948) ("Moreover, from buying various types of five-cent candies, cough drops, and lozenges packed by machine in standard rectangular containers, [an ordinary person] has come to expect some slack or air space.").

Throughout the Complaint, Plaintiff equates a violation of the FDCA and parallel New York state statutes as violations of sections 349 and 350. (*See, e.g.*, Compl. ¶ 69 ("The practices

employed by Defendant, whereby Defendant advertised, promoted, marketed and sold its Products in packages containing non-functional slack-fill are unfair, deceptive and misleading and are in violation of the NY GBL [section] 349, New York [Agriculture and Markets] Law [section] 201 and the FDCA (21 U.S.C. [section] 343(d)) in that said Products are misbranded."); *id.* ¶ 76 ("Pursuant to the FDCA as implemented through 21 C.F.R. [section] 100.100, package size is an affirmative representation of quantity. Thus, the non-functional slack-fill in Defendant's Product constituted false advertising as to the quantity of candy contained therein."); *see also* Pl. Opp'n 2 ("[T]he FDA-defined reasonable consumer test is identical to, and applied by, New York consumer protection laws.").) Plaintiff's reasoning thus assumes that a reasonable consumer would *only* consider the size of the product in making purchasing decisions based on perceived amount or quantity of food.

Plaintiff relies principally on FDA commentary regarding 21 C.F.R. section 100.100 to argue that "false representation of quantity, created by the size of the Product packages, cannot be cured by a written weight or count representation."[13] (Pl. Opp'n 12–13.) The FDA has opined that "[t]o rule that an accurate net weight statement protects against misleading fill would render the prohibition against misleading fill in section 403(d) of the act redundant." Misleading

---

[13] In making this argument, Plaintiff contradicts herself by relying on additional factors aside from size of the box to frame her points. For example, Plaintiff asserts that the "written weight or count representation" cannot cure misleading slack-fill "*particularly in the context of the Product's misleading images*." (Pl. Opp'n 12 (emphasis added).) In addition, Plaintiff asserts that "the disclosure that Plaintiff's box contained [fourteen] pieces of candy does not establish its fill level because it implies nothing about the *size* of those pieces." (*Id.* at 13 (emphasis in original).) By attaching significance to the enlarged *picture* of the candy, Plaintiff concedes reasonable consumers take into consideration factors aside from the size of the box. Plaintiff also *assumes* a material difference between representations made by pictures as opposed to those made by words. The Court finds this unexplained, artificial distinction between representations made by pictures as opposed to words irrelevant because they are both different *types* of context that reasonable consumers take into account.

Containers; Nonfunctional Slack-Fill, 58 Fed. Reg. 64123-01, 64129 (Dec. 6, 1993) (codified at 21 C.F.R. pt. 100). The FDA has also explained that Congress "intended [403(d)] to reach deceptive methods of filling where the package is only partly filled and, despite the declaration of quantity of contents on the label, creates the impression that it contains more food than it does." *Id.* Finding the FDA commentary persuasive, the district court in *Izquierdo v. Mondelez International Inc.*, No. 16-CV-04697, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016), "decline[d] to adopt [defendant's] theory that a manufacturer of a deceptively packaged product is immune from suit so long as the package accurately lists the product's net weight and quantity."

To the extent *Izquierdo* stands for the proposition that accurate disclosure of net weight and quantity can *never* cure misrepresentations arising from non-functional slack-fill under New York consumer protection laws as a matter of law, the Court disagrees with such a ruling. While non-functional slack-fill violates the FDCA and parallel state statutes, as discussed above, New York courts further require that the misrepresentation be *material* to be actionable under sections 349 and 350. Viewed in *context*, the alleged misrepresentation must be likely to mislead a reasonable consumer acting reasonably. *See also Kommer*, 252 F. Supp. 3d at 312 ("Assuming that a reasonable consumer might ignore the evidence plainly before him 'attributes to consumers a level of stupidity that the [c]ourt cannot countenance and that is not actionable under G.B.L. [section] 349.'" (citation omitted)). As other courts have recognized, a reasonable consumer takes into consideration factors aside from package size in assessing the amount or quantity of a product. *See Fermin*, 215 F. Supp. 3d at 212 (finding reasonable consumers take into account the written labels of the product); *Mennen*, 565 F. Supp. at 655 (same); *see also Ebner*, 838 F.3d at 965 (same); *Bush*, 2016 WL 5886886, at *3 (same).

Finally, even Plaintiff concedes that package size is but a factor in a consumer's assessment of product amount or quantity.  In the Complaint, Plaintiff, for example, alleges that consumers "reasonably relied in *substantial part* on [the Product size's] implicit representations of quantity and volume."  (*See, e.g.*, Compl. ¶ 10 (emphasis added).)  Separately, Plaintiff also alleges that "[t]he *labeling*, packaging, and advertising for the Product, relied upon by Plaintiff . . . reasonably misled the reasonable consumer."  (*Id.* ¶ 22 (emphasis added).)  Perhaps recognizing that her submissions undermine her argument, Plaintiff in her Opposition brief and accompanying declaration alleges for the first time that the *picture* of the candy on the front of the Product is misleading.  (*See* Pl. Opp'n 14 ("[T]he Product labels convey an affirmatively false depiction of the size of the individual candies within.").)

Thus, absent exceptional circumstances, a reasonable consumer acting reasonably would find accurate, clearly visible representations of net weight, serving size, and number of servings to offset any misrepresentations arising from non-functional slack-fill.[14]  Here, Plaintiff fails to allege in the Complaint any reason why a reasonable consumer would not have considered the

---

[14]  While disclaimers may not always defeat a claim of deception, (*see Sitt v. Nature's Bounty, Inc.*, No. 15-CV-4199, 2016 WL 5372794, at *13–14 (E.D.N.Y. Sept. 26, 2016)), the Court draws a distinction between misrepresentations concerning *quantitative* as opposed to *qualitative* characteristics of a product.  When the alleged misrepresentation concerns a qualitative quality, consumers are more often forced to weigh various competing statements to tease out the truth — allowing for differing reasonable interpretations.  In contrast, when the alleged misrepresentation concerns only the amount or quantity of a product, consumers, once apprised of the express accounting on the label, cannot be said to be misled (so long as the information is presented in a clear, easy to understand manner).  Recognizing the existence of slack-fill in almost all products, consumers are especially likely to consider the label, rather than the packaging, to be the accurate measure of the amount of product.  Nevertheless, there may be factually distinguishable cases where the *unique* nature of the non-functional slack-fill at issue would render even accurate disclosures ineffective.  Plaintiff fails to allege as much in this case.

disclosures on the Product.  Nor did Plaintiff challenge the disclosure's accuracy or visibility.[15]

Likely recognizing the deficiency of her claims, Plaintiff asserts for the first time in her Opposition brief that the enlarged picture of the candy on the front of the box voided any corrective disclosure, but nevertheless concedes that the word "enlarged" appears next to the picture.  (C.K. Lee Decl. in Supp. of Pl. Opp'n ("Lee Decl.") ¶ 5, Docket Entry No. 25.)  Rather than dispute the word's visibility, Plaintiff challenges the *meaning* a reasonable consumer would attach to the term "enlarged."  In doing so, Plaintiff makes a specious claim that it is unclear whether the word is in "refer[ence] to the candies within or just the image."  (*Id.*)  A reasonable consumer does not lack common sense.  *See Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2011) ("[T]he applicable legal standard is whether a reasonable consumer, *not the least sophisticated consumer*, would be misled by Defendants' actions." (emphasis added)); *116 Boxes*, 80 F. Supp. at 913 ("Infantile anticipation is not the test.").  Moreover, the back and sides of the box include pictures of the candy that are clearly smaller than in reality.  (*See* Hanian Decl. ¶ 3(b) & (d).)  Plaintiff fails to explain why a reasonable consumer would not take the *shrunken* pictures into account.  Furthermore, as Plaintiff acknowledges, consumers care about the density or volume of a product only as it relates to the amount or quantity of food.  (*See* Compl. ¶ 42. ("[Plaintiffs and class members] receiv[ed] *less* candy than was promised to them through the size of the Product packaging." (emphasis added)); *see also Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 402–03 (E.D.N.Y. 2010) ("[A]t most, the [c]omplaint alleges that [defendant's] packaging implicitly misrepresents the product's *volume* and *density.*  After

---

[15]  For the first time in the Opposition brief, Plaintiff asserts that the Product only provided "*faintly* written representations of weight," implying an issue with the label's visibility.  (*See* Pl. Opp'n 15.)  To the extent that she seeks to make such an argument, Plaintiff must have done so in her Complaint.

all, if [the product] was less dense, then 180 grams of product might, in fact, fill the

unnecessarily large jar it came in.”).)[16] Where consumers only care about the amount or quantity

of food, the actual size of the candies is immaterial when the Product affirmatively discloses how

much food the box contains. Consumers receive the same amount or quantity of food, as

---

[16] The Court does not agree with *Waldman*’s distinction between slack-fill claims based on common law fraud as opposed to GBL sections 349 and 350. *Waldman*, 714 F. Supp. 2d at 405. In *Waldman*, the court dismissed the common law fraud claim for lack of materiality because the plaintiff failed to plead any facts suggesting that “she, or other class members, cared about [the product’s] density . . . [or that the] unexpectedly higher density, deluded her, or other class members, into thinking that the [product’s] box contained more than the [thirty] servings it expressly listed.” *Id.* Despite this reasoning, the court declined to dismiss the GBL sections 349 and 350 claims on the same basis. *Id.* at 406. Citing to *Gaidon v. Guardian Life Insurance Co. of America,* 94 N.Y.2d 330 (1999), the court summarily explained this internal inconsistency by stating that “New York law recognizes that a statement can be materially misleading [under GBL section 349] without being a material misrepresentation [under common law fraud].” *Waldman*, 714 F. Supp. 2d at 405 n.9.

The *Gaidon* court, however, based its different treatment of common law fraud and GBL section 349 and 350 claims on an incomplete disclaimer. In *Gaidon*, the plaintiffs asserted that they bought defendants’ insurance policies “based on defendants’ false representations that out-of-pocket premium payments would vanish within a stated period of time.” *Gaidon*, 94 N.Y.2d at 338. The defendants argued that the “illustrated vanishing dates were not deceptive,” in part, because of “disclaimer language” stating that results may vary. *Id.* at 345. The *Gaidon* court held that this “*partial* disclosure” which “revealed the possibility of a dividend/interest rate decline, but did not reveal its practical implications to the policyholder” was sufficient to preclude a claim of common law fraud but not one under GBL section 349 because of the higher level of evidence required to establish fraud. *Id.* at 350 (emphasis added). In finding the GBL section 349 claims to be sufficiently pleaded, the court explained that the “disclaimers . . . d[id] not speak to the true, unrevealed relationship between dividend/interest rates and the vanishing dates as represented.” *Id.* at 345. Moreover, the court indicated that the complexity of the topic at issue contributed to the ineffectiveness of the disclaimers. *Id.* at 345.

In contrast, the disclosure in this case will ensure that a reasonable consumer acting reasonably under the circumstances will not be misled by any misrepresentation emanating from excess slack-fill. As the *Waldman* court itself implicitly recognized, consumers only care about density of packaging as it relates to the amount or quantity of product. *See Waldman*, 714 F. Supp. 2d at 403. Here, the Product label explicitly provides the net weight, serving size and number of servings. The information is also easy to understand for consumers (e.g., number of candy requires multiplying seven (serving size) by two (number of servings)). This *complete* (as to the amount or quantity of food) and accurate disclosure is sufficient to defeat claims for not only common law fraud but also those pursuant to GBL sections 349 and 350.

provided on the label, regardless of the density of the candy and whether the container is larger than necessary. *See Wurtzburger v. Kentucky Fried Chicken*, No. 16-CV-08186, 2017 WL 6416296, at *3 (S.D.N.Y. Dec. 13, 2017) ("[T]he use of a larger than necessary [container] - is not materially deceptive or misleading . . . Nor is it misleading, as defined by [section 349], that [d]efendant could have or should have used a smaller [container] for the amount of food packaged or provided."); *see also Waldman*, 714 F. Supp. 2d at 403 (dismissing fraud claim for lack of materiality because plaintiff failed to plead facts that she or other class members "cared about [the product's] density" in and of itself or that the "higher density deluded her, or other class members, into thinking that [the product] box contained more than the [thirty] servings it expressly listed"); *Bautista*, 223 F. Supp. 3d at 192 n.8 (citing *Waldman*, 714 F. Supp. 2d at 403, for the same proposition). Moreover, a reasonable consumer is even more likely to rely on the label where, as here, there is a discrepancy as to the size of the individual pieces of product. In short, Plaintiff has failed to sufficiently plead a material misrepresentation.[17]

---

[17] Plaintiff also alleges that certain consumers, "particularly [those] at a movie theater," would not be able to "investigate food boxes by squeezing and shaking them." (Pl. Opp'n 10.); *see also Stephanie Escobar v. Just Born Inc. et al.*, No. 17-CV-01826, 2017 WL 5125740 (C.D. Cal. June 12, 2017) (finding significant that consumers did not have "the opportunity to manipulate the contents of the product at issue" which were kept in a "glass enclosure" at a movie theater). However, Plaintiff allegedly purchased the Product the second time at a Target Store (the Complaint fails to state where she purchased the Product the first time). (Compl. ¶ 19.) Moreover, the Court's reasoning does not rely on any manipulation or handling of the boxes. As discussed above, Plaintiff needs to allege sufficient facts and explanations as to why a reasonable consumer would not take into account the labeling in assessing the amount or quantity of food. Even at movie theaters, the Product is visible to some degree. Plaintiff must therefore allege why the labeling visible at movie theaters, even if less than at other venues, is insufficient to offset any misrepresentation arising from non-functional slack-fill. Finally, to the extent Plaintiff is relying on the manner in which the Product may have been displayed by some retailers rather than the Product itself, it is unclear whether such a claim could be brought against Defendant. *See Druyan v. Jagger*, 508 F. Supp. 2d 228, 244 (S.D.N.Y. 2007) (noting that plaintiff failed to plead any facts "tend[ing] to impute [one defendant's] alleged[] [misrepresentations by ticketmaster for concert] to any of the other [promoter] defendants").

### iii. Injury

Plaintiff alleges that she and the putative class "were injured as the result of Defendant's deceptive conduct because they paid money for less Product than" represented by the size of the Product's package. (Compl. ¶ 42.) According to Plaintiff, the alleged injury "can be characterized as either deprival of the benefit of her bargain or payment of a price premium." (Pl. Opp'n 20.) Plaintiff allegedly was deprived of her bargain because she "received less candy" than the size of the Product's package represented, "consequently, . . . pa[ying] a higher price per unit of candy than [she] had bargained for." (*Id.* at 21.) In addition, Plaintiff argues that the amount of money paid constitutes a price premium because she "paid money for less Product than Defendant represented" and "would not have agreed to this exchange had [she] known the truth." (*Id.*)

"An actual injury claim under [s]ection[s] 349 [and 350] typically requires a plaintiff to 'allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase.'" *Izquierdo*, 2016 WL 6459832, at *7 (quoting *Orlander*, 802 F.3d at 302); *Orlander*, 802 F.3d at 302 (finding actual injury under both sections 349 and 350 where plaintiff "purchased a product and did not receive the full value of her purchase"). This prong may be satisfied through an allegation that a plaintiff overpaid for the product, or, stated differently, "by a claim that a plaintiff paid a premium for a product based on [the] defendants' inaccurate representations." *Ackerman*, 2010 WL 2925955, at *23; *see also Orlander*, 802 F.3d at 302 (explaining that in some cases the price premium theory "show[s] that [the] plaintiff paid more than they would have for the good but for the deceptive practices of the defendant-sellers").

### 1. Plaintiff's injuries are based on the payment of a price premium

While Plaintiff attempts to differentiate her injury claims as two distinct theories, in reality, both claim injury based on the payment of a price premium. *See Ackerman*, 2010 WL 2925955, at *23. Plaintiff is not asserting injury because she received less candy in and of itself. Rather, Plaintiff is asserting injury because the alleged lesser amount of food caused her to pay a "*higher price* per unit of candy." (Pl. Opp'n 21 (emphasis added).) Although *Lazaroff v. Paraco Gas Corp.*, 967 N.Y.S.2d 867, 2011 WL 9962089 (N.Y. Sup. Ct. Kings Cty., Feb. 25, 2011), relied upon by Plaintiff for her "benefit of the bargain" argument, does not expressly use the term "price premium," the Second Circuit and this Court, among others, have recognized the case as an exemplar of price premium injury. *See Orlander*, 802 F.3d at 302; *Greene*, 262 F. Supp. 3d at 68; *Braynina v. TJX Companies, Inc.*, No. 15-CV-5897, 2016 WL 5374134, at *10 (S.D.N.Y. Sept. 26, 2016).

In most price premium cases, the alleged misrepresentation conveys to consumers that the product at issue contains a unique, desirable quality. *See Irvine v. Kate Spade & Co.*, No. 16-CV-7300, 2017 WL 4326538, at *3 (S.D.N.Y. Sept. 28, 2017) (collecting cases); *Greene*, 262 F. Supp. 3d at 68 (finding a sufficiently pled section 349 injury where plaintiff alleged that she would not have paid the price charged if not for the purported allergy benefits in the Infant Formula); *Koenig*, 995 F. Supp. 2d at 288–89 (finding a sufficiently-pled section 349 injury where the plaintiff alleged that he would not have paid the price charged for "fat-free" milk had he known it contained fat); *Ebin v. Kangadis Food Inc.*, No. 13-CV-2311, 2013 WL 6504547, at *4–5 (S.D.N.Y. Dec. 11, 2013) (finding a sufficient-pled section 349 injury where the plaintiffs alleged they would not have paid the price charged if they had known that the product did not contain "100% Pure Olive Oil"); *see also Small,* 94 N.Y.2d at 56 n.5 ("[P]laintiff might have a

claim where a distributor asserts that its bottled water is from a pure and pristine mountain stream while in reality, it was only tap water.").  In most cases**,** "price premium" should thus be observable through an increased price in comparison to products without the desirable quality. *See Belcastro v. Burberry Ltd.*, No. 16-CV-1080, 2017 WL 744596, at *5 (S.D.N.Y. Feb. 23, 2017) ("*Small* requires some connection between the deception and the price actually paid by the plaintiff *or the intrinsic value* of the good." (emphasis added)); *Ebin*, 2013 WL 6504547, at *4 (finding injury properly pled where the complaint included "a chart comparing the price paid by [the] plaintiff [] to the lower price available from a competing brand").  Slack-fill cases, however, involve a categorically different type of misrepresentation — *lesser amount or quantity* than represented.  Even while holding prices steady, manufacturers can effectively "inflate" the price by providing less product.

This interpretation is consistent with *Lazaroff* which the Second Circuit endorsed as a case illustrative of price premium injury.  *See Orlander*, 802 F.3d at 302.  In *Lazaroff*, the plaintiff alleged that he would not have paid the price charged for a twenty-pound propane cylinder had he known it only contained fifteen pounds of propane.  *Lazaroff*, 2011 WL 9962089, at *6.  Finding a cognizable injury for GBL section 349, the court explained that:

> [p]laintiff [had] allege[d] that, had he understood the true amount of the product, he would not have purchased it, and that he and the purported members of the class paid a higher price per gallon/pound of propane and failed to receive what was promised and/or the benefit of his bargain, i.e., a full 20 pound cylinder and the amount of propane he was promised.

*Id.*  As the court explained, the only discrepancy was in the *amount or quantity* of the product. *Id.*  Although the price of the product did not change, the alleged lesser amount or quantity was

sufficient evidence of price premium.[18]  *Id.*; *Orlander*, 802 F.3d at 302.

### 2. Defendant erroneously argues that Plaintiff has failed to allege price premium injury

Relying principally on *Izquierdo*, Defendant argues that Plaintiff fails to "provide any factual basis to establish that she paid a higher price for the Product than she otherwise would have." (Def. Mem. 22.)  The *Izquierdo* court, citing *Small v. Lorillard Tobacco Co.*, 720 N.E.2d 892, 898 (N.Y. 1999), explained that New York law did not recognize a "deception as injury theory — . . . that consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices have suffered an injury under [section] 349." 2016 WL 6459832, at *7.  Therefore, the *Izquierdo* court essentially required the plaintiff to demonstrate that "the cost of the Candy was inflated by [the defendant's] allegedly misleading packaging."  *Id.*  However, to the extent *Izquierdo* stands for the proposition that reduced amount or quantity cannot be indicative of an "inflated" cost or price, this Court disagrees with such a ruling.

Noticeably, Defendant does not challenge the reasoning in *Lazaroff* — that less product than promised constitutes an injury — but instead attempts to distinguish the circumstances here

---

[18]  Defendant asserts that "Target — where Plaintiff claims to have purchased the [Product] — sells virtually all theater box candy, including [the Product], Crawlers, Dots® (among many others) for $1.00." (Def. Mem. at 23.)  Defendants argue that this fact "suggests that (a) the amount of slack-fill in each product has no impact on its price; and (b) Target not [Defendant] sets the retail price of the candy." (*Id.*)  The Court does not find Defendant's arguments persuasive.  In slack-fill cases, the fact that the price for all box candy is effectively the same does not necessarily indicate the absence of a price premium for Defendant's Product. Manufacturers can effectively "inflate" the price by decreasing the amount of product rather than raising the price.  In addition, the fact that a third party would price all candies in similar sized boxed candies the same would appear to *incentivize* manufactures to increase the amount of slack-fill.  If all box candies are valued the same, regardless of the amount of product, Defendant and other manufacturers could increase their profit margin by decreasing the amount of candy (assuming retailers also pay all manufacturers the same price for similarly sized boxes).  In short, these alleged facts do not necessarily help Defendant.

from those present in that case. (*See* Def. Mem. 23; Def. Reply in Supp. of Def. Mot. ("Def. Reply") 8, Docket Entry No. 24.) Defendant argues that *Lazaroff* is inapposite because it involved a dispute over the visibility of the label which was allegedly obscured by a metal cage. In contrast, the parties in this action do not dispute that the Product's net weight was clearly visible. As discussed earlier, the accuracy and visibility of the labels are relevant to whether an action is materially misleading. *See Lazaroff,* 2011 WL 9962089, at *4–5. Defendant's argument thus conflates elements two (material misrepresentation) and three (injury) for claims under sections 349 and 350. While the "exact *nature* of the 'materially misleading' practices *alleged* . . . necessarily influences the injury analysis," Defendant does not provide any support that courts cannot find injury in the absence of an *adequately* pled material misrepresentation. *Orlander*, 802 F.3d at 300. Indeed, in *Orlander*, the Second Circuit recognized that in *Stutman v. Chemical Bank,* 95 N.Y.2d 24, 30–31 (2000), the "New York Court of Appeals rejected the plaintiff's claim not because the plaintiff failed to state an injury under . . . [s]ection 349, but because he failed to allege a deceptive practice." *Id.* In fact, "the [*Stutman*] court explained that the allegation that a deceptive practice caused plaintiff to pay a $275 fee sufficiently pled an actual injury under [s]ection 349." *Id.*; *see also Stutman*, 95 N.Y.2d at 31 ("Nevertheless, we uphold the Appellate Division's dismissal of plaintiffs' claim, for a different reason: plaintiffs have failed to show that defendant committed a deceptive act.").

However, because sections 349 and 350 require the satisfaction of each element, the Court does not find it necessary to resolve the question of whether an injury requires an adequately pled material representation given Plaintiff's failure to adequately plead a material misrepresentation. *See Kearney v. Cavalry Portfolio Servs., LLC*, No. 12-CV-00860, 2014 WL 3778746, at *10 (E.D.N.Y. July 31, 2014) ("The section 349 inquiry is conjunctive; therefore,

the Court need not address the first and third factors."); *Fleisher v. Phoenix Life Ins. Co.*, 858 F. Supp. 2d 290, 304 (S.D.N.Y. 2012) ("However, [section] 349's requirements are conjunctive . . . Because, as discussed below, I dismiss Count Three on the injury ground, I need not reach the consumer-orientation arguments.).

Assuming, however, that the injury element does not require an adequately pled material misrepresentation, the Court finds that Plaintiff has sufficiently pled injury. As in *Lazaroff*, Plaintiff has alleged that she received less candy than promised, consequently paying a higher price per candy, and had she understood the true amount, she would not have purchased the Product.[19] *See Lazaroff*, 2011 WL 9962089 at *6 ("Plaintiff alleges that, had he understood the true amount of the product, he would not have purchased it, and that he and the purported members of the class paid a higher price per gallon/pound of propane . . . . Thus, plaintiff has

---

[19] As explained in *Greene*, 262 F. Supp. 3d at 68, the Court finds that to the extent *Izquierdo* holds that Plaintiff must identify a precisely comparable product in order to allege a GBL section 349 or 350 claim under a price premium theory, *Izquierdo* contradicts the weight of the law in this Circuit. Courts routinely allow complaints that lack allegations of both cheaper and exactly comparable products to survive motions to dismiss. *See Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 481–82 (S.D.N.Y. 2014) (explaining that courts "have found valid [section] 349 claims despite plaintiffs not identifying competitors or prices" and that "while identifying the prices of competing products in the [c]omplaint would strengthen [the p]laintiff's allegation of injury," the allegations are not necessary to state a claim); *see also Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015) (reversing a district court and holding that the plaintiff had stated claims under GBL sections 349 and 350 because "[p]laintiff has alleged that he purchased a two-year 'Carry-in' Protection Plan but did not receive the services that [d]efendant misleadingly told [p]laintiff he was purchasing"); *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826, 2015 WL 5579872, at *22 (E.D.N.Y. Sept. 22, 2015) (finding a sufficiently-pled section 349 injury where the plaintiffs alleged that "through the deceptive practice of marketing and selling their products . . . [the defendants] have been able to command a premium price by deceiving consumers about the attributes of their yogurts and distinguishing themselves from similar products"); *Weisblum*, 88 F. Supp. 3d at 292–93 (finding a sufficiently-pled section 349 injury where the plaintiff alleged that he was damaged in the amount of the difference in value between the product as advertised and the product as actually sold); *Koenig*, 995 F. Supp. 2d at 288 (finding a sufficiently-pled section 349 injury where the plaintiffs alleged that they paid price premiums based on the defendants' misrepresentations without identifying a specific comparable product).

properly alleged injury." (internal citation omitted)).

Nevertheless, because the Complaint fails to plead any conduct that is materially misleading, the Court dismisses Plaintiff's section 349 and 350 claims.

### e. Common law fraud

Plaintiff argues that, through the Product's non-functional slack-fill, Defendant has made an implied misrepresentation as to the amount of product in the container. (Compl. ¶ 82.) Defendant does not directly address Plaintiff's common law fraud claim. Instead, Defendant appears to imply that the arguments against materiality and preemption apply with equal force to both Plaintiff's statutory and common law claims. As discussed below, like the statutory claims, Plaintiff fails to plead facts rendering plausible the conclusion that the slack fill in Defendant's Product is nonfunctional within the meaning of the FDCA and parallel state statutes. *Bautista*, 223 F. Supp. 3d at 192. Even if this defect can be cured by a comparison between the Product and the Assorted Box, as asserted in Plaintiff's Opposition submission, the fraud claim fails because Plaintiff cannot establish reasonable or justifiable reliance.

"To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402 (2d Cir. 2015); *see Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006) (stating the elements of fraud under New York law). Pleadings for common law claims premised on fraud are "subject to the particularity pleading requirements of Federal Rule of Civil Procedure 9(b)." *Putnam Advisory Co*, 783 F.3d at 402–03 (internal quotation marks omitted)

(citing *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004)).

"In New York, it is well settled that a plaintiff cannot establish justifiable reliance when, 'by the exercise of ordinary intelligence it could have learned of the information it asserts was withheld.'" *Transnational Mgmt. Sys. II, LLC v. Carcione*, No. 14-CV-2151, 2016 WL 7077040, at *8 (S.D.N.Y. Dec. 5, 2016), *appeal dismissed sub nom. Transnational Management Sys. II, LLC v. Carcione*, No. 16-CV-4294 (2d Cir. Dec. 29, 2016) (citation omitted); *see also Paraco Gas Corp. v. Travelers Cas. & Sur. Co. of Am.*, 51 F. Supp. 3d 379, 393 (S.D.N.Y. 2014) ("Under New York law, a 'party cannot claim reliance on a misrepresentation when he or she could have discovered the truth with due diligence.'"); *Schumaker v. Mather*, 133 N.Y. 590, 596 (1892) ("[T]he general rule is that if the facts represented are not matters peculiarly within the party's knowledge, and the other party has the means available to him of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations."). "'Only when matters are held to be peculiarly within defendant's knowledge is it said that plaintiff may rely without prosecuting an investigation,' because the plaintiff would have 'no independent means of ascertaining the truth.'" *Transnational Mgmt. Sys. II*, 2016 WL 7077040, at *8 (citation omitted).

For essentially the same reasons discussed regarding the material representation prong for the statutory claims, Plaintiff fails to plead reasonable reliance.[20]  Plaintiff does not dispute that

_____

[20]  It is not clear to the Court that the term "material misrepresentation" carries the same meaning for common law fraud as for claims pursuant to sections 349 and 350.  Other characterizations of the elements of common law fraud suggest the contrary — "representation of a *material fact*, falsity, scienter, reliance, and injury."  *In re Refco Inc. Sec. Litig.*, No. 07-

the Product provided clearly visible and accurate written labels as to net weight and quantity of candies.  In view of this accurate disclosure, a person of "ordinary intelligence" could have learned of the extent of slack-fill and the amount of food by looking to the labels (and also by manipulation of the package).[21]  Since a simple "investigation" would have dispelled any misrepresentation as to the amount of food arising from the size of the box, Plaintiff's common law fraud claim is foreclosed as a matter of law.  *See Transnational Mgmt. Sys. II*, 2016 WL 7077040, at *9 (dismissing fraud claim where relevant facts were not "peculiarly within" defendants' knowledge and plaintiff failed to investigate); *Paraco Gas Corp.*, 51 F. Supp. 3d at 397 (same).

### f.  Leave to amend

Rule 15 of the Federal Rules of Civil Procedure provide that courts "should freely give leave" to amend a complaint "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Second Circuit has stated that "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits."  *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (citation omitted).  Leave to amend should be given "absent evidence of undue delay, bad

---

MD-1902, 2013 WL 12191892, at *5 (S.D.N.Y. Apr. 21, 2013) (emphasis added).  The emphasis on "*a material fact*" suggests that a false statement may suffice as long as it is a significant factor that may have been relied upon.  Therefore, unlike claims under sections 349 and 350, a material misrepresentation for a common law claim conceivably may not take into account surrounding circumstances.  Rather, the requirement for *reasonable* reliance appears to be the element that takes into account surrounding circumstances, i.e. context.  Nevertheless, the Complaint also fails to plead a material misrepresentation for fraud because there is no allegation that Plaintiff "cared about density" in and of itself.  *See Bautista*, 223 F. Supp. 3d at 192 n.8 (S.D.N.Y. 2016) (citing *Waldman*, 714 F. Supp. 2d at 403).

[21]  Unlike sections 349 and 350, common law fraud requires an investigation, including potentially manipulation of the package.  *See Transnational Mgmt. Sys. II, LLC v. Carcione*, No. 14-CV-2151, 2016 WL 7077040, at *8 (S.D.N.Y. Dec. 5, 2016) (collecting cases), *appeal withdrawn sub nom. Transnational Mgmt. Sys., LLC v. Carcione*, No. 16-4294, 2017 WL 6759302 (2d Cir. Feb. 23, 2017).

faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000); *see also Couloute v. Ryncarz*, No. 11-CV-5986, 2012 WL 541089, at *3 (S.D.N.Y. Feb. 17, 2012) (quoting *Monahan*, 214 F.3d at 283). However, motions to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008); *Monahan*, 214 F.3d at 283.

The Court grants Plaintiff leave to amend her statutory claims to cure, if able, the deficient pleading discussed in this Memorandum and Order. However, the Court finds that amendments to the common law claim would be futile.

### III. Conclusion

For the foregoing reasons, the Court grants Defendant's motion to dismiss and grants Plaintiff thirty (30) days to file amended statutory claims.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: February 26, 2018
       Brooklyn, New York